# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

EDWARD C. LAMBERT,

    Plaintiff,

v.

WAL-MART STORES, INC.,
a foreign corporation,
WAL-MART ASSOCIATES, INC.,
a foreign corporation,
WALMART INC.,
a foreign corporation, and
WAL-MART STORES EAST LP,
a foreign limited partnership,

    Defendants.

Case No.
Hon.

**DEMAND FOR JURY TRIAL**

---

THOMAS R. WARNICKE (P47148)
LAW OFFICES OF THOMAS R. WARNICKE, PLLC
Attorneys for Plaintiff
16291 W. 14 Mile Road, Ste. 21
Beverly Hills, MI 48025
(248) 930-4411

---

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Edward C. Lambert, by and through his attorney, for his

Complaint against Defendants, states and alleges the following:

## Jurisdiction and Venue

1. At all times relevant to this matter, Plaintiff, Edward C. Lambert ("Plaintiff"), was and is a citizen and resident of the city of Bay City, county of Bay, and state of Michigan, and within the jurisdiction of this Court. Plaintiff was employed by Defendants during the times set forth below.

2. Defendant, Wal-Mart Stores, Inc., is a foreign corporation, with its' corporate offices and headquarters located in Bentonville, Arkansas, and operates retail stores throughout the United States, including locations within the jurisdiction of this Court.

3. Defendant, Wal-Mart Associates, Inc., is a foreign corporation, with its' corporate offices and headquarters located in Bentonville, Arkansas, and operates retail stores throughout the United States, including locations within the jurisdiction of this Court.

4. Defendant, Walmart Inc., is a foreign corporation, with its' corporate offices and headquarters located in Bentonville, Arkansas, and operates retail stores throughout the United States, including locations within the jurisdiction of this Court.

5. Defendant, Wal-Mart Stores East LP, is a foreign limited liability company, with its' corporate offices and headquarters located in

Bentonville, Arkansas, and operates retail stores throughout the United States, including locations within the jurisdiction of this Court.

6. The Defendants set forth in paragraphs 2-5 above are collectively referred to herein as Defendants or Wal-Mart.

7. This action is brought, in part, pursuant to the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101 *et seq.* (PDCRA), as well as other common state law claims.

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there exists complete diversity of citizenship between the parties and the amount in dispute in is excess of $75,000, including economic damages, loss of benefits, and emotional distress damages.

9. Declaratory, injunctive and other appropriate relief, including monetary and/or punitive damages, are sought pursuant to the aforementioned Act.

10. Venue in this Court is proper as the employment practices alleged to be unlawful in this matter occurred at Defendant Wal-Mart's store located in the county of Bay, state of Michigan, which was

the location where Plaintiff was employed by Defendants and all operative facts occurred within the jurisdiction of this Court.

11. Plaintiff was terminated from his employment by Defendants on April 14, 2016.

### General Allegations and Statement of Claims

12. Plaintiff re-alleges and incorporates the paragraphs above.

13. Plaintiff was employed by the Wal-Mart Defendants for approximately for 8 years.

14. Plaintiff began his employment with the Wal-Mart Defendants on or about March 25, 2008, at a Wal-Mart store in Bay City, Michigan.

15. Plaintiff worked first in a part-time seasonal position in Lawn and Garden, then moving up to a full-time permanent position as an Inventory Control Specialist.

16. Plaintiff was a full-time hourly employee for the last 6 and a half years of his career with Defendants.

17. Plaintiff was compensated on an hourly basis during his entire career employed by Defendants.

18. At the time of his termination, Plaintiff was making approximately $12.53 per hour.

19. During his 8+ years of employment with Defendants, Plaintiff received satisfactory or above evaluations.

20. Plaintiff also received various employee-related benefits during his employment with Defendants, such as health benefits and paid time off.

21. Plaintiff endured stressful circumstances everyday while at work.

22. More specifically, Plaintiff's job responsibilities increased tremendously during his time at Walmart as he and six others would be required to complete the work of what usually took 12 employees.

23. Adding to the stress, Plaintiff was told by his assistant manager, Eddie Sims, on multiple occasions, that he wasn't doing enough and if he didn't make his quota again then he would be given a "coaching offense."

24. Keep in mind, Plaintiff's quota was to have at least 75 department picks per hour, along with the many other responsibilities Plaintiff had.

25. Prior to Plaintiff's discussion with Mr. Sims, Plaintiff voiced his concern with store manager, Paul Borema, about the conflict of opinion between himself and Mr. Sims.

26. However, Plaintiff continuously went to work on time and gave his best effort every day he was there.

27. On December 21, 2015, Plaintiff took a leave of absence due to extreme stress and anxiety and depression, some of which was caused by his working conditions at Wal-Mart.

28. Over the course of three and a half months, Plaintiff saw physicians regarding the above stated conditions.

29. Such conditions are recognized disabilities under the PDCRA.

30. On February 17, 2016, Plaintiff was involuntarily hospitalized at Forest View Hospital in Grand Rapids for matters related to his medical condition.

31. Defendants were aware of Plaintiff's medical condition and disabilities.

32. On April 5, 2016, Plaintiff returned to work at Defendants.

33. On April 11, 2016, while putting freight onto a roller as he had been trained, Plaintiff's foot became tangled in the shrink-wrap of the pallet and he fell over backwards and while using his right arm to brace his fall he received a gash on his arm.

34. Plaintiff's lead supervisor helped wrap his arm to stop the bleeding.

35. Plaintiff went back to work loading the truck, but soon realized his arm was very swollen.

36. Plaintiff was sent to Covenant Clinic in Bay City.

37. It was determined that Plaintiff had a contusion on his arm and he was given antibiotics.

38. Plaintiff returned to work the next day on April 11, 2016.

39. On April 12, 2016, Plaintiff was asked to give an account of the incident, which he did.

40. On April 13, 2016, Plaintiff was asked by his assistant manager, Eddie Sims, if he was working the next day, to which the Plaintiff responded "yes sir."

41. On April 14, 2016, Plaintiff went to work and then took lunch, however, upon returning from lunch Plaintiff was restricted from using his I.D. badge.

42. Plaintiff reported that his I.D. badge was not working, at which time he was taken to Eddie Sim's office where Plaintiff was asked if "he remembered the accident he was involved in on Monday."

43. Plaintiff answered "yes" and without explanation Plaintiff was told by Mr. Sims that he would have to let him go.

44. Plaintiff was shocked and devastated by this news as his income from Defendants was his only source of income to care for his family.

45. Plaintiff informed Mr. Sims that he was only doing his job at which time Mr. Sims responded "I understand all that but I still have to let you go."

46. Plaintiff refused to sign any paperwork in regards to the termination until he could speak to his manager Paul Borema.

47. On April 15, 2016, Plaintiff met with Mr. Borema.

48. At that meeting, Mr. Borema stumbled in saying that Plaintiff was informed that he had previous "coachings," or write-ups on his record that should have been dropped off from the previous year but were not.

49. Mr. Borema informed Plaintiff that he was found him at fault for getting injured on the job, which also contributed to his termination.

50. In reality, Plaintiff was terminated by Defendants because of his disability.

51. Depression, anxiety and extreme stress are a recognized disability that limits major life activities by way of a functional disorder as

described by the Michigan Persons with Disabilities Civil Rights Act.

52. Plaintiff was discriminated against by the Defendants and retaliated against for taking a leave of absence to better deal with his mental health issues.

53. In reality, Defendants purported reason(s) for Plaintiff's termination were pretextual.

54. In fact, the real reason for Plaintiff's termination was due to his disability and/or in retaliation for going on disability leave.

## COUNTS 1, 2 AND 3

## DISABILTY DISCRIMINATION, RETALIATION AND WRONGFUL TERMINATION IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITES CIVIL RIGHTS ACT

55. Plaintiff repeats and reincorporates set forth above.

56. At all times pertinent hereto, Defendants were Plaintiff's employer within the meaning of the Michigan Persons with Disabilities Civil Rights Act (PDCRA).

57. Plaintiff was a disabled person within the meaning of the PDCRA.

58. Plaintiff was discriminated against by Defendants because of his disability and/or his perceived disability.

59. At all times relevant hereto, Plaintiff was qualified for his position with Defendants.

60. Moreover, Plaintiff was able to perform the essential functions of his job, with or without reasonable accommodations.

61. Such reasonable accommodations included, but were not limited to, allowing Plaintiff to take mental health absences to better care for himself.

62. Providing such reasonable accommodations would not have resulted in any hardship to Defendants.

63. Plaintiff suffered an adverse reaction when he was retaliated against and ultimately terminated by Defendants, all due to his disability.

64. Defendants knew or had reason to know of Plaintiff's disability.

65. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to a gainful occupation of choice.  Plaintiff is also entitled to additional compensatory and punitive damages.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, as follows:

a. Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

b. Exemplary, liquidated, or punitive damages in whatever amount Plaintiff is found to be entitled;

c. Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

d. An award for the value of lost fringe and pension benefits, past and future;

e. An award of interest, costs, and reasonable attorney fees;

f. An injunction prohibiting any further acts of retaliation or discrimination; and

g. Whatever other equitable relief appears appropriate at the time of final judgment, including reinstatement.

## **COUNT 4**

## **CIVIL CONSPIRACY**

66. Plaintiff repeats and reincorporates by reference the above stated paragraphs.

67. That Defendants acted to commit the wrongful acts set forth in Counts 1-3 above, and/or conspired with others to commit the wrongful acts.

68. Defendants' actions constituted a concerted action.

69. The concerted actions were engaged in by two or more persons.

70. The concerted action was designed to accomplish a criminal or unlawful purpose by criminal or unlawful means.

71. As a result of Defendants' acting in a conspiracy against Plaintiff, Plaintiff suffered economic damages, emotional distress damages, and other monetary damages in having to defend against the frivolous charges, including attorney fees, interest and costs

72. Plaintiff is also entitled to recover exemplary or punitive damages as compensation for the emotional distress caused by the Defendants' involvement in the conspiracy against Plaintiff.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court enter judgment against Defendants in favor of Plaintiff, in an amount in excess of $25,000 or as Plaintiff's proves at trial, plus interest, costs and

attorney's fees so wrongfully incurred and award such other or additional relief as the Court finds appropriate.

## COUNT 5

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

73. Plaintiff repeats and reincorporates by reference the above stated paragraphs.

74. As set forth above, Plaintiff was subjected to extreme and outrageous conduct by Defendants; Defendants' conduct was intentional and reckless; and Defendants' conduct caused Plaintiff severe emotional distress.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendants as follows:

   a. Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

   b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

   c. Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

   d. An award for the value of lost fringe and pension benefits, past and future;

  e. An award of interest, costs, and reasonable attorney fees;

  f. An injunction prohibiting any further acts of retaliation or discrimination; and

  g. Whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT 6

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

75. Plaintiff repeats and reincorporates by reference the above stated paragraphs.

76. As set forth above, Plaintiff was subjected to extreme and outrageous conduct by Defendants; Defendants' conduct was negligent; and Defendants' conduct caused Plaintiff severe emotional distress.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendants as follows:

  a. Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

  b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

    c.      Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

    d.      An award for the value of lost fringe and pension benefits, past and future;

    e.      An award of interest, costs, and reasonable attorney fees;

    f.      An injunction prohibiting any further acts of retaliation or discrimination; and

    g.      Whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT 7

## NEGLIGENCE

77. Plaintiff repeats and reincorporates by reference the above stated paragraphs.

78. Defendants had a duty to use reasonable and ordinary care in its safety guidelines when Plaintiff, and its other employees, preformed their work duties.

79. Defendants breached their duties by failing to use reasonable and ordinary care in implementing a safer work environment for Plaintiff.

80. Defendants' breaches of their aforesaid duties were the direct and proximate cause of Plaintiff suffering significant damages, which included economic damages, emotional distress damages, loss of reputation, and attorney fees and court costs.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendants as follows:

- a. Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;
- b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;
- c. Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;
- d. An award for the value of lost fringe and pension benefits, past and future;
- e. An award of interest, costs, and reasonable attorney fees;
- f. An injunction prohibiting any further acts of retaliation or discrimination; and

    g.    Whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT 8

## GROSS NEGLIGENCE

81. Plaintiff repeats and reincorporates by reference the above stated paragraphs.

82. Defendants' aforesaid acts constituted gross negligence in that its conduct or acts were so reckless and in wanton disregard for Plaintiff's rights that it demonstrated a substantial lack of concern and indifference for whether an injury would result to Plaintiff.

83. Defendants' aforesaid gross negligence was the direct and proximate cause of Plaintiff suffering significant damages, including economic damages, emotional distress damages, loss of reputation, and attorney fees and court costs.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendants as follows:

    a.    Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

c. Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

d. An award for the value of lost fringe and pension benefits, past and future;

e. An award of interest, costs, and reasonable attorney fees;

f. An injunction prohibiting any further acts of retaliation or discrimination; and

g. Whatever other equitable relief appears appropriate at the time of final judgment.

                        Respectfully submitted,

                        /s/ Thomas R. Warnicke
                        THOMAS R. WARNICKE (P47148)
                        Attorneys for Plaintiff

## **JURY DEMAND**

Plaintiff hereby demands a jury trial in this action.

        Respectfully submitted,

        /s/ Thomas R. Warnicke
        THOMAS R. WARNICKE (P47148)
        Attorneys for Plaintiff